CARTER, C.J.
 

 |/This is an appeal from the partial grant of a partial summary judgment filed in an
 
 ad valorem
 
 tax dispute between Florida Gas Transmission Company (the plaintiff), an interstate natural gas pipeline company, and the defendants, the Louisiana Tax Commission (LTC) and various sheriffs and assessors throughout the state of Louisiana. This appeal has been expedited in accordance with La. R.S. 47:1998.
 

 At issue is whether Louisiana’s
 
 ad valo-rem
 
 tax scheme violates the Commerce Clause of the United States Constitution either in form or in application. After due consideration, that part of the district court judgment partially granting the assessors’ motion for summary judgment is affirmed. That part of the district court judgment partially denying the assessors’ motion for summary judgment is reversed, and we render judgment declaring La. R.S. 47:1851 K unconstitutional and La. R.S. 47:1851 M unconstitutional in part.
 

 FACTS AND PROCEDURAL
 
 HISTORY
 
 [1]
 

 The facts of this case, although lengthy, are substantially undisputed. The plaintiff is the owner of interstate natural gas pipelines located in part within the territorial boundaries of Louisiana. At issue herein is the plaintiffs liability for 2006 Louisiana
 
 ad valorem
 
 taxes.
 

 The plaintiff is a “pipeline company,” as defined in La. R.S. 47:1851 K, that owns, and owes
 
 ad valorem
 
 taxes on, “public service property,” as that category of property is defined in La. R.S. 47:1851 M. So | .-.defined, the plaintiff is subject to an assessment of 25% of fair market value, as determined by the LTC.
 
 See
 
 La. Const, art. VII, § 18. Other similarly situated, direct competitors operating in intrastate commerce do not meet the definition of “pipeline companies.” Their properties are not considered “public service properties,” and therefore, they are subject to assessments of 15% of fair market value, as determined by the local assessors.
 
 See
 
 La. Const, art. VII, § 18.
 

 The plaintiff paid its 2006
 
 ad valorem
 
 tax assessment under protest and filed suit, asserting therein that “challenges to the assessed valuation of its pipeline property by the LTC and to the Louisiana
 
 ad valorem
 
 tax scheme ... are solely constitutional issues.” The plaintiff sought a finding that “the Louisiana
 
 ad valorem
 
 tax scheme is unconstitutional [and] in violation of the Commerce Clause of the United States Constitution, in that it imposes an impermissible burden on interstate commerce by imposing a greater tax burden on interstate natural gas pipelines companies than it does upon intrastate natural gas pipeline companies.” Specifically, the plaintiff maintained that the assessment of its property at 25% of fair market value, as opposed to 15% of fair market value, is in violation of the Commerce Clause of the United States Constitution.
 
 [2]
 

 
 *336
 
 Named as defendants in this litigation are the LTC; Elizabeth Guglielmo, in her capacity as Chairperson of the LTC; and twenty sheriffs |fiand twenty assessors from parishes scattered throughout the state of Louisiana.
 
 [3]
 

 On motion of various assessors, this action (bearing docket number 551,435) was transferred and consolidated with district court docket number 491,453
 
 (Transcontinental Gas Pipe Line Corporation, et al. v. Louisiana Tax Commission, et al.).
 
 Numerous distinct district court actions have been consolidated under docket number 491,453 and are currently pending in the Nineteenth Judicial District Court. Although there may be some overlap in the plaintiffs, the defendants, and the tax years in these consolidated actions, each action is unique.
 
 See Dendy v. City National Bank,
 
 2006-2436 (La.App. 1 Cir. 10/17/07), 977 So.2d 8, 11 (noting that the consolidation of actions pursuant to La. Code Civ. P. art. 1561 is a procedural convenience designed to avoid multiplicity of actions and does not cause a case to lose its status as a procedural entity). In 17common, the plaintiffs in each suit are corporate interstate pipeline companies, all challenging the constitutionality of Louisiana’s
 
 ad valorem
 
 tax scheme.
 

 Thirteen assessors collectively answered the plaintiffs petition.
 
 [4]
 
 Thereafter, a motion for summary judgment was filed on
 
 *337
 
 behalf of twelve assessors.
 
 [5]
 
 The assessors asked for a declaration as to the constitutionality of the Louisiana
 
 ad valorem
 
 tax scheme and, to the extent the district court determined the tax scheme to be unconstitutional, a judgment specifically striking the unconstitutional provisions. The assessors also asked for entry of summary judgment dismissing the plaintiffs claims for refunds and remanding this matter to the LTC for revaluation of the plaintiffs property by the parish assessors and reassessment at 15% of fair market value. Succinctly stated, through their motion for summary judgment, the assessors asked the district court to determine the legal efficacy of the plaintiffs claims.
 

 1 RLater, Sheriff Greg Champagne of St. Charles Parish and Sheriff Sidney Gau-treaux filed their own answers to the plaintiffs petition.
 
 [6]
 
 Sheriff Champagne and Sheriff Gautreaux did not join in the motion for summary judgment and are not parties to this appeal.
 

 On December 16, 2008, the district court signed a written judgment granting in part and denying in part the motion for summary judgment filed by the “Assessors of Acadia; Cameron; East Baton Rouge; Iberia; Jefferson Davis; Lafourche; St. Landry; St. Martin; St. Mary; Vermilion and Washington Parishes in Docket No. 551,482.”
 
 [7]
 
 The trial court rendered judgment, finding that in order to avoid a violation of the Commerce Clause of the United States Constitution, taxes on all pipeline property (whether operated in interstate or intrastate commerce) should be calculated at a 15% rate. Citing to
 
 Transcontinental Gas Pipe Line Corporation v. Louisiana Tax Commission,
 
 2005-2604, 2005-2605 (La.App. 1 Cir. 3/31/06), 925 So.2d 777 (unpublished),
 
 writ denied,
 
 2006-0988 (La.9/1/06), 936 So.2d 204, and
 
 ANR Pipeline Co. v. Louisiana Tax Commission,
 
 2005-1142 (La.App. 1 Cir. 9/7/05), 923 So.2d 81,
 
 writ denied,
 
 2005-2372 (La.3/17/06), 925 So.2d 547,
 
 cert. denied,
 
 549 U.S. 822, 127 S.Ct. 157, 166 L.Ed.2d 38, the district court further remanded the matters to the LTC with instructions that the LTC require the named assessors “to determine the valuation of public service properties of the Plaintiff, Florida Gas | (/Transmission Company[,] in their respective parishes for each year at issue and calculate
 
 ad valorem
 
 taxes based on fifteen percent (15%) of those assessments.” The district court found it unnecessary to rule on the constitutionality of La. R.S. 47:1851 in reaching its decision.
 

 On motion of the assessors, the trial court designated the partial judgment as
 
 *338
 
 final and immediately appealable pursuant to La.Code Civ. P. art. 1915 B. The plaintiff then moved for orders of appeal to both the Louisiana Supreme Court and to the Louisiana First Circuit Court of Appeal. After the plaintiffs appeal was lodged with this court, the LTC answered the appeal stating it is aggrieved by the trial court’s judgment “to the extent that the judgment holds that any portion of the Louisiana Ad Valorem property tax scheme is unconstitutional or otherwise illegal.” The assessors did not appeal the trial court’s judgment and have not answered the appeal.
 

 After the record was lodged with this court, the Louisiana Supreme Court issued an opinion dismissing the plaintiffs appeal to the supreme court. The supreme court noted that “[bjecause there is no declaration of unconstitutionality in the district court’s judgment, there is no basis for the exercise of this court’s appellate jurisdiction. Appellate jurisdiction lies in the court of appeal. La. Const, art. V, § 10(A).” The appeal was transferred “to the court of appeal for consideration on the merits.”
 
 [8]
 

 Florida Gas Transmission Co. v. Louisiana Tax Commission,
 
 2009-0729 (La.05/15/09), 10 So.3d 1219, 1220
 
 (per cu-riam
 
 ).
 

 l10The remand from the Louisiana Supreme Court has been lodged with this court as
 
 Transcontinental Gas Pipe Line Corp. v. Louisiana Tax Commission,
 
 2009-0966,
 
 consolidated with, Florida Gas Transmission Co. v. Louisiana Tax Commission,
 
 2009-0967 (LaApp. 1 Cir. 8/10/09), 2009 WL 2462543 (unpublished). The issues raised by the plaintiff in the cases remanded by the Louisiana Supreme Court were raised herein. In addition, the LTC has answered this appeal. For these reasons, we will evaluate the merits of all claims herein and dismiss by separate action the appeal lodged under docket no. 2009-0966 c/w 2009-0967 as moot.
 

 DISCUSSION
 

 The Standard of Review and the Burden of Proof
 

 Appellate review of the granting of a motion for summary judgment is
 
 de novo,
 
 using the identical criteria that govern the district court’s consideration of whether summary judgment is appropriate.
 
 King v. Illinois National Insurance Co.,
 
 2008-1491 (La.4/3/09), 9 So.3d 780, 784. A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue of material fact, and the mover is entitled to judgment as a matter of law.
 
 See
 
 La.Code Civ. P. art. 966 B.
 

 On a motion for summary judgment, the burden of proof remains with the movant.
 
 Samaha v. Rau,
 
 2007-1726 (La.2/26/08), 977 So.2d 880, 883. However, if the mov-ant will not bear the burden of proof at trial, the movant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense.
 
 Samaha,
 
 977 So.2d at 883. Rather, the movant’s burden is to point out to the court that |nthere is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense.
 
 Samaha,
 
 977 So.2d at 883. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material
 
 *339
 
 fact.
 
 Samaha,
 
 977 So.2d at 888. Once the motion for summary judgment has been properly supported by the moving party, the failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion.
 
 Samaha,
 
 977 So.2d at 883.
 

 Herein, the significant facts are undisputed, and only questions of law remain. Because statutes are presumed to be constitutional, the party challenging the validity of a statute, the plaintiff herein, has the burden of proving its unconstitutionality.
 
 Fruge v. Board of Trustees of Louisiana State Employees’ Retirement System,
 
 2008-1270 (La.12/2/08), 6 So.3d 124, 128. However, when engaged in a Commerce Clause analysis, the burden may shift between the taxpayer and taxing authority. For example, once a state law is shown to discriminate either on its face or in practical effect, the burden falls on the state to demonstrate that the statute serves a legitimate local purpose that cannot be achieved in a less discriminatory way.
 
 Maine v. Taylor,
 
 477 U.S. 131, 138, 106 S.Ct. 2440, 91 L.Ed.2d 110 (1986).
 
 [9]
 

 [
 
 12Commerce Clause Analysis
 

 The Commerce Clause of the United States Constitution grants Congress the power “[t]o regulate Commerce ... among the several States.... ” U.S. Const, art. I, § 8, cl. 3. “The very purpose of the Commerce Clause was to create an area of free trade among the several States.”
 
 McLeod v. J.E. Dilworth Co.,
 
 322 U.S. 327, 330, 64 S.Ct. 1023, 88 L.Ed. 1304(1944).
 

 The Commerce Clause not only authorizes congressional action but also prohibits certain state taxation even when Congress has failed to legislate on the subject.
 
 Oklahoma Tax Commission v. Jefferson Lines, Inc.,
 
 514 U.S. 175, 179, 115 S.Ct. 1331, 131 L.Ed.2d 261 (1995). The Commerce Clause has a negative aspect that denies the states the power unjustifiably to discriminate against or burden the interstate flow of articles of commerce.
 
 Oregon
 
 Waste
 
 Systems, Inc. v. Department of Environmental Quality of the State of Oregon,
 
 511 U.S. 93, 98, 114 S.Ct. 1345, 128 L.Ed.2d 13 (1994). This restrictive aspect of the Commerce Clause is referred to as the dormant Commerce Clause.
 
 [10]
 

 See Oklahoma Tax Commission,
 
 514 U.S. at 179, 115 S.Ct. 1331.
 

 The dormant Commerce Clause prohibits states, unless authorized by Congress, from attempting to advance their own commercial interests by curtailing the movement of articles of commerce, either into or out of the state.
 
 IIP. Hood
 
 
 *340
 

 & Sons, Inc. v. DuMond,
 
 336 U.S. 525, 535, 69 S.Ct. 657, 93 L.Ed. 865 (1949). Discrimination is the “differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter.”
 
 Oregon Waste Systems,
 
 511 U.S. at 99, 114 S.Ct. 1345. A state may not tax a transaction or incident more heavily when it crosses state lines than when it occurs entirely within the state.
 
 Armco Inc. v. Hardesty,
 
 467 U.S. 638, 642, 104 S.Ct. 2620, 81 L.Ed.2d 540 (1984). No state may impose a tax that discriminates against interstate commerce by providing a direct commercial advantage to local business.
 
 Boston Stock Exchange v. State Tax Commission,
 
 429 U.S. 318, 329, 97 S.Ct. 599, 50 L.Ed.2d 514 (1977).
 

 This anti-discrimination principle arises from the basic purpose of the Commerce Clause, which is to prohibit the multiplication of preferential trade areas destructive of the free commerce anticipated by the Constitution.
 
 Maryland v. Louisiana,
 
 451 U.S. 725, 754, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981). The dormant Commerce Clause’s fundamental objective is to preserve a national market for competition that is undisturbed by preferential advantages conferred by a state upon its resident competitors.
 
 See General Motors Corp. v. Tracy,
 
 519 U.S. 278, 299, 117 S.Ct. 811, 136 L.Ed.2d 761 (1997).
 

 Any notion of discrimination assumes a comparison of substantially similar entities.
 
 United Haulers Association, Inc. v. Oneida-Herkimer Solid Waste Management Authority,
 
 550 U.S. 330, 342, 127 S.Ct. 1786, 167 L.Ed.2d 655 (2007);
 
 General Motors,
 
 519 U.S. at 298, 117 S.Ct. 811. For the dormant Commerce Clause to apply, it is essential that there be actual or prospective competition between supposedly favored and disfavored entities in a single market, whether by express discrimination against interstate commerce or undue burden upon it.
 
 General Motors,
 
 519 U.S. at 300, 117 S.Ct. 811. All 114parties agree that the natural gas pipeline companies operating in Louisiana, both those operating intrastate and interstate, are direct competitors and similarly situated; therefore, dormant Commerce Clause analysis is appropriate.
 

 In
 
 Complete Auto Transit v. Brady,
 
 430 U.S. 274, 279, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977), the Supreme Court set forth a four-part test that state taxes must pass in order to be valid under the Commerce Clause. The tax must:
 

 1. Be applied to an activity that has a substantial nexus with the state;
 

 2. Be fairly apportioned to activities in the state;
 

 3. Not discriminate against interstate commerce; and
 

 4. Be fairly related to services provided by the state.
 

 Only the third requirement is at issue herein. Does the Louisiana
 
 ad valorem
 
 tax scheme discriminate against interstate commerce? A state tax discriminates against interstate commerce if it: (1) is facially discriminatory; (2) has a discriminatory intent; or (3) has the effect of unduly burdening interstate commerce.
 
 Amerada Hess Corp. v. Director, Division of Taxation, New Jersey Department of the Treasury,
 
 490 U.S. 66, 75, 109 S.Ct. 1617, 104 L.Ed.2d 58 (1989).
 

 Notably, even
 
 nondiscriminatory
 
 burdens on commerce may be struck down on a showing that they clearly outweigh the benefits of a state or local practice.
 
 Pike v. Bruce Church, Inc.,
 
 397 U.S. 137, 142, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970). If interstate commerce is burdened, courts should consider three facts:
 

 1. Is there a furtherance of a legitimate local public interest;
 

 
 *341
 
 2. Does the statute regulate evenhandedly; and
 

 | ls3. Does the statute place an undue burden on interstate commerce?
 

 Pike,
 
 397 U.S. at 142, 90 S.Ct. 844.
 

 Unfortunately, there is no clear line separating the category of state regulation that is virtually
 
 per se
 
 invalid under the Commerce Clause and the category subject to the
 
 Pike
 
 balancing approach,
 
 Brown-Forman Distillers Corp. v. New York State Liquor Authority,
 
 476 U.S. 573, 579, 106 S.Ct. 2080, 90 L.Ed.2d 552 (1986). In both situations, however, the critical consideration is the overall effect of the statute on both local and interstate activity.
 
 Brown-Forman,
 
 476 U.S. at 579, 106 S.Ct. 2080.
 

 When called upon to make the delicate adjustment between the national interest in free and open trade and the legitimate interest of the individual states in exercising their taxing powers, the Supreme Court has advised that the result turns on the unique characteristics of the statute at issue and the particular circumstances in each case.
 
 Boston Stock Exchange,
 
 429 U.S. at 329, 97 S.Ct. 599. This case-by-case approach has left “much room for controversy and confusion and little in the way of precise guides to the States in the exercise of their indispensable power of taxation.”
 
 Northwestern States Portland Cement Co. v. Minnesota,
 
 358 U.S. 450, 457, 79 S.Ct. 357, 3 L.Ed.2d 421 (1959).
 

 With these legal precepts in mind, we turn our attention to Louisiana’s
 
 ad valorem
 
 tax scheme. “A state tax must be assessed in light of its actual effect considered in conjunction with other provisions of the State’s tax scheme.”
 
 Maryland,
 
 451 U.S. at 756, 101 S.Ct. 2114. The assessment and collection of
 
 ad valorem
 
 taxes in Louisiana is provided for in our constitution, as well as in our revised statutes. Louisiana employs a classified property tax system in assessing
 
 ad valorem
 
 taxes. Under the Louisiana system, 116pipeline properties, both interstate and certain intrastate, are assessed at a higher ratio to fair market value (25%) than other intrastate pipeline properties (15%). The plaintiff maintains that Louisiana’s classification scheme subjects interstate natural gas pipelines to discriminatory taxation, which is prohibited under the Commerce Clause of the United States Constitution.
 

 Louisiana Constitution article VII, section 18 B provides for the classification of property subject to
 
 ad valorem
 
 taxes in Louisiana and the percentage of fair market value applicable to each classification for the purpose of determining the assessed valuation. Significant to this litigation, “public service properties,” excluding land, are subject to a 25% assessed valuation. “Other property’ is subject to a 15% of fair market value assessment. Article VTI, section 18(B) provides that “[t]he legislature may enact laws defining ... public service properties.”
 

 The legislature has defined “public service properties” as “immovable, major movable, and other movable property owned or used but not otherwise assessed in this state in the operations of each ... pipeline company[.]” La. R.S. 47:1851 M. “Pipeline company” is defined in La. R.S. 47:1851 K as:
 

 [A]ny company that is engaged primarily in the business of transporting oil, natural gas, petroleum products, or other products within, through, into, or from this state, and which is regulated by (1) the Louisiana Public Service Commission, (2) the Interstate Commerce Commission, or (3) the Federal Power Commission, as a “natural gas company” under the Federal Natural Gas Act, 15 U.S.C. §§ 717-717w, because that person is engaged in the transportation of
 
 *342
 
 natural gas in interstate commerce, as defined in the Natural Gas Act.
 

 Article VII, section 18(D) provides for the method of determining the fair market value of property subject to
 
 ad valorem
 
 taxation. Specifically:
 

 1 17Each assessor shall determine the fair market value of all property subject to taxation within his respective parish or district except public service properties, which shall be valued at fair market value by the Louisiana Tax Commission or its successor. Each assessor shall determine the use value of property which is to be so assessed under the provisions of Paragraph (C). Fair market value and use value of property shall be determined in accordance with criteria which shall be established by law and which shall apply uniformly throughout the state.
 

 When a constitutional provision is plain and unambiguous and its application does not lead to absurd consequences, its language must be given effect.
 
 Board of Directors of Indus. Development Bd. of City of Gonzales, Louisiana, Inc. v. All Taxpayers, Property Owners, Citizens of City of Gonzales,
 
 2005-2298 (La.9/6/06), 938 So.2d 11, 20. Under the clear language of La. Const, art. VII, § 18(D), the LTC determines the fair market value of “public service properties.” The fair market value of all other property subject to taxation within a parish is determined by the assessor of the parish where the property is located.
 

 To summarize, pursuant to La. R.S. 47:1851 K and M and La. Const, art. VII, § 18(D), companies that transport natural gas within, through, into, or from this state
 
 and
 
 which are subject to specific regulation are defined as “pipeline companies.” These statutorily defined “pipeline companies” possess immovable, major movable, and other movable properties that are statutorily defined as “public service properties.” These statutorily defined “public service properties” are subject to an assessment based on 25% of fair market value as determined by the LTC.
 

 The plaintiffs pipelines are regulated by the Federal Energy Regulatory Commission (FERC), successor agency of the Federal Power Commission, under the Federal Natural Gas Act (NGA), 15 U.S.C. §§ 717-1 18717w. Accordingly, the plaintiff is a “natural-gas company” as that term is defined under the NGA, 15 U.S.C. § 717a(6). As an FERC-regulated natural gas company under the NGA, the plaintiff is a “pipeline company,” as that term is defined in La. R.S. 47:1851 K, which owns “public service property,” as that term is used in La. R.S. 47:1851 M. So defined and in accordance with La. Const, art. VII, § 18, the plaintiff is subject to a 25% assessment of fair market value, as determined by the LTC.
 

 To determine whether this
 
 ad valorem
 
 tax assessment procedure discriminates against interstate commerce, we now examine the
 
 Amerada Hess
 
 factors. A state tax discriminates against interstate commerce if it: (1) is facially discriminatory; (2) has a discriminatory intent; or (3) has the effect of unduly burdening interstate commerce.
 
 Amerada Hess,
 
 490 U.S. at 75, 109 S.Ct. 1617. The plaintiff does not argue that Louisiana’s tax assessment procedure has a discriminatory intent; therefore, the second
 
 Amerada Hess
 
 factor is not at issue. Rather, the plaintiff submits that Louisiana’s
 
 ad valorem
 
 tax scheme violates the first and third factors in that the tax scheme is facially discriminatory or unduly burdensome on interstate commerce.
 

 The assessors respond that the higher tax assessment is not based on whether a natural gas pipeline company is engaged in
 
 *343
 
 interstate or intrastate commerce. Rather, the higher assessment is based on whether a natural gas pipeline company is subject to rate regulation,
 
 regardless
 
 of whether it is engaged in interstate or intrastate commerce. The assessors submit that, where taxation is concerned and assuming no specific federal right is imperiled, states have large leeway to establish classifications that produce a reasonable system of taxation. The right to create classifications, however, |mis not without restraint, and a classification cannot be maintained if it results in a violation of the United States Commerce Clause.
 

 The United States Supreme Court does not recognize a
 
 de minimis
 
 defense to a charge of discriminatory taxation under the Commerce Clause.
 
 Fulton Corp. v. Faulkner,
 
 516 U.S. 325, 333 n. 3, 116 S.Ct. 848, 133 L.Ed.2d 796 (1996). A court “need not know how unequal the Tax is before concluding that it unconstitutionally discriminates.”
 
 Maryland,
 
 451 U.S. at 760, 101 S.Ct. 2114. The fact that intrastate as well as interstate commerce may be adversely affected is immaterial to the determination of whether a law is discriminatory for Commerce Clause purposes.
 
 Sanifill, Inc. v. Kandiyohi County,
 
 559 N.W.2d 111, 115 n. 3 (Minn.App.1997). Regulations that treat all out-of-state companies in a disparate manner will be treated as discriminatory even though some instate companies also are adversely affected by the regulation.
 
 Kentucky Power Co. v. Huelsmann,
 
 352 F.Supp.2d 777, 786 (E.D.Ky.2005).
 

 In
 
 Bacchus Imports, Ltd. v. Dias,
 
 468 U.S. 263, 104 S.Ct. 3049, 82 L.Ed.2d 200 (1984), the Supreme Court struck down as facially discriminatory certain liquor tax exemptions that benefitted two specific, locally produced alcoholic beverages. The tax exemptions applied to some, but not all, locally produced beverages. The court offered, “as long as there is some competition between the locally produced exempt products and non-exempt products from outside the state, there is a discriminatory effect.”
 
 Bacchus Imports,
 
 468 U.S at 271, 104 S.Ct. 3049. Actual discrimination, wherever it is found, is impermissible, and the magnitude and scope of the discrimination have no bearing on the determinative question of whether discrimination has | ^occurred.
 
 Associated Industries of Missouri v. Lohman,
 
 511 U.S. 641, 650, 114 S.Ct. 1815, 128 L.Ed.2d 639 (1994).
 

 More recently, in the matter of
 
 In re CIG Field Services Co.,
 
 279 Kan. 857, 112 P.3d 138, 150 (2005), the Kansas Supreme Court held that a property tax statute that differentiated between interstate and in-tercounty natural gas gathering systems and intracounty systems was facially discriminatory under the Commerce Clause. As in the case at hand, there was no differential treatment of
 
 certain
 
 intrastate entities in comparison to entities in interstate commerce. After a careful study of Supreme Court jurisprudence, the court concluded that “this imperfect discrimination is nevertheless discrimination.”
 
 CIG,
 
 112 P.3d at 150. Because there exists no
 
 de minimis
 
 exception to facial discrimination under the United States Commerce Clause, we are compelled to conclude that, in its present state, Louisiana’s
 
 ad valorem
 
 tax scheme facially discriminates against the plaintiff in violation of the Commerce Clause of the United States Constitution.
 

 Facial discrimination against interstate commerce invokes the strictest scrutiny of any professed legitimate local purpose and of the absence of nondiscriminatory alternatives.
 
 Hughes v. Oklahoma,
 
 441 U.S. 322, 337, 99 S.Ct. 1727, 60 L.Ed.2d 250 (1979). In 1994, the Supreme Court stated that if a restriction on commerce is discriminatory, it is “virtually
 
 per
 
 
 *344
 

 se
 
 invalid.”
 
 Oregon Waste,
 
 511 U.S. at 99, 114 S.Ct. 1345. Once a state law is shown to discriminate either on its face or in practical effect, the burden falls on the state to demonstrate that the statute serves a legitimate local purpose that cannot be achieved in a less discriminatory way.
 
 Maine v. Taylor,
 
 477 U.S. 131, 138, 106 S.Ct. 2440, 91 L.Ed.2d 110 (1986). This is an extremely |⅞1 difficult burden placed on taxing authorities, so heavy that facial discrimination by itself may be a fatal defect.
 
 Camps Newfound/Owatonna,
 
 520 U.S. at 582, 117 S.Ct. 1590. “Once a state tax is found to discriminate against out-of-state commerce, it is typically struck down without further inquiry.”
 
 Chemical Waste Management, Inc. v. Hunt,
 
 504 U.S. 334, 342, 112 S.Ct. 2009, 119 L.Ed.2d 121 (1992). Moreover, the record before us offers no adequate proof of either a legitimate local purpose or of the absence of nondiscriminatory alternatives such as might defeat the strict scrutiny accorded a facially discriminatory scheme.
 
 [11]
 

 Finding Louisiana’s
 
 ad valorem
 
 tax scheme in its present form is facially discriminatory against natural gas pipeline transportation companies operating in interstate commerce, we must fashion a legal remedy.
 

 The Remedy
 

 Louisiana’s
 
 ad valorem
 
 tax scheme encompasses both constitutional and statutory provisions. As already observed, the plaintiff is a “pipeline company,” as defined in La. R.S. 47:1851 K, that owns and owes taxes on “public service property,” as that category of property is defined in La. R.S. 47:1851 M. So defined, the plaintiff is subject to an assessment of 25% of fair market value, as determined by the LTC.
 
 See
 
 La. Const, art. VII, § 18. Other similarly situated, direct competitors operating in intrastate commerce do not meet the definition of “pipeline companies” because they are unregulated. Their properties are not considered “public service properties,” and therefore, they are subject to assessments of 15% of fair market value, as | ^determined by the local assessors.
 
 See
 
 La. Const, art. VII, § 18. It is this discrepancy in classifying some, but not all, similarly situated and competing natural gas pipeline transportation companies as “pipeline companies” that creates the facial discrimination against interstate commerce. In fashioning a legal remedy for the plaintiff, we find it unnecessary to declare the entire
 
 ad valorem
 
 tax scheme unconstitutional when removal of the limited, offensive provisions of that scheme can accomplish the necessary result.
 

 During oral argument, counsel for the plaintiff suggested that the current discrimination is a result of the amendment to La. Const, art. VII, § 18(B) by 1979 La. Acts No. 799. The preamble to Act 799 provided for “an additional classification of property subject to ad valorem taxation for public service properties as defined by law ... and [provided] that the percentage of fair market value applicable for the purpose of determining assessed valuation for such public service properties, excluding land, shall be twenty-five percent.” The proposed amendment was presented to, and approved by, the electors of the state of Louisiana at the October 27, 1979, gubernatorial general election.
 
 See
 
 1979 La. Acts No. 799, § 2.
 

 In essence, the plaintiff submits this court should remedy the discriminatory treatment imposed upon it by the Louisiana
 
 ad valorem
 
 tax scheme by ordering the LTC to reduce its tax burden to reflect
 
 *345
 
 the 15% assessed valuation applicable to those intrastate natural gas pipelines that are not defined as “pipeline companies” under the
 
 ad valorem
 
 tax scheme. The plaintiff seeks to maintain its properties’ status as “public service properties,” thus having its properties centrally valued by the LTC. However, it seeks an assessment of 15% of that value. To grant the plaintiff l^the relief it requests would be to disregard the clear directives of La. Const, art. VII, § 18. Only “public service properties,” subject to an assessment at 25% of fair market value, are to be valued by the LTC. All “other property,” subject to an assessment of 15% of fair market value, is to be valued by the local assessors.
 

 The constitution is the supreme law, to which all legislative acts and all ordinances, rules, and regulations of creatures of the legislature must yield.
 
 Macon v. Costa,
 
 437 So.2d 806, 810 (La.1983). We decline to strike a Louisiana constitutional provision, approved by the electors of this state, when a fair and equitable result can be reached by striking the statutory provision that creates the discrimination. For these reasons, we turn our attention to the relevant statute — La. R.S. 47:1851 — and, in particular, subsections K and M.
 

 We are ever mindful of the presumption that the legislature acts within its constitutional authority in enacting legislation, and courts must construe a statute so as to preserve its constitutionality when it is reasonable to do so.
 
 Fruge,
 
 6 So.3d at 128. The unconstitutionality of one or more portions of a law does not render the entire law unenforceable if the remaining portions are severable from the offending portions.
 
 Louisiana Associated General Contractors, Inc. v. State,
 
 95-2105 (La.3/8/96), 669 So.2d 1185, 1201;
 
 see
 
 La. R.S. 24:175 A. Severance requires a determination that the legislature would have passed the act in the absence of the invalid portion. Thus, the issue is would the legislature have passed La. R.S. 47:1851 had the legislation been presented with the invalid features removed?
 
 See Louisiana Associated,
 
 669 So.2d at 1201. Where the purpose of the statute is defeated by the invalidity of part of the act, the ¡^entire act is void.
 
 Louisiana Associated,
 
 669 So.2d at 1201. Conversely, however, when the general objectives of the act can be achieved without the invalid part, the remaining parts of the act will be upheld.
 
 Louisiana Associated,
 
 669 So.2d at 1201;
 
 see also World Trade Center Taxing Dist. v. All Taxpayers, Property Owners,
 
 2005-0374 (La.6/29/05), 908 So.2d 623, 637-638.
 

 Louisiana Revised Statutes 47:1851, subsections K and M, were enacted by 1976 La. Acts No. 703, § 1 (prior to 1979 La. Acts No. 799, which amended La. Const, art. VII, § 18(B)). Section 4 of Act 703 specifies:
 

 If any provision or item of this Act or the application thereof is held invalid, such invalidity shall not affect other provisions, items, or applications of this Act which can be given effect without the invalid provisions, items, or applications, and to this end, the provisions of this Act are declared to be severable.
 

 Louisiana Revised Statutes 47:1851 need not be stricken in its entirety. It is the definition of “pipeline company” found in subsection K that results in disparate treatment between interstate and some intrastate pipeline companies. Thus, we are compelled to conclude that subsection K is unconstitutional and in violation of the Commerce Clause. So concluding necessitates a declaration that inclusion of “pipeline company” in La. R.S. 47:1851 M is unconstitutional and in violation of the Commerce Clause, and the phrase “pipeline company” should be stricken from La. R.S. 47:1851 M. The remaining portions of La. R.S. 47:1851 are independent and
 
 *346
 
 capable of being given effect without reference to the invalid portions. Thus, the remaining part of La. R.S. 47:1851 M and other provisions of La. R.S. 47:1851 (excluding subsection K) are severable and valid. As a result of these declarations, the plaintiffs properties will be classified as “other properties” for purposes of Louisiana’s
 
 ad valorem
 
 tax scheme and will be ^assessed in compliance with La. Const, art. VII, § 18 at 15% of fair market value as determined by the assessors of the parishes within which the plaintiffs properties are located.
 
 [12]
 

 The plaintiff submits that upon remand for
 
 de novo
 
 assessment by the local assessors, the local assessors will be motivated to arrive at higher valuations than those set by the LTC. We find the plaintiffs contention unpersuasive. At the hearing on the motion for summary judgment, the plaintiff offered into evidence, without objection, the affidavit of Nancy Heller Hughes. Ms. Hughes attested that she is an Accredited Senior Appraiser of public utility property. Although the LTC and the local assessors use different valuation methods, Ms. Hughes concluded:
 

 Fair market value is fan* market value. If applied properly to reflect all forms of depreciation (physical, functional and economic), the
 
 cost
 
 approach used by local parish assessors should produce similar results as the correlated cost and income approaches used by the Louisiana Tax Commission to assess the value of public service property.
 

 Moreover, the local assessors’ valuations of properties are not unbridled. Article VII, § 18(D) requires that “[flair market value and use value of property shall be determined in accordance with criteria which shall be established by law and which shall apply uniformly throughout the state.” Like the plaintiff herein, the plaintiff in
 
 ANR Pipeline
 
 advanced a similar ^argument.
 
 [13]
 
 This court noted that the assessors are required, pursuant to La. R.S. 47:1992 A(l), to prepare a list showing the assessment of immovable and movable property of the affected companies in and for the parish or district and expose the list daily for inspection by the plaintiff and any other interested parties for a period of fifteen days.
 
 ANR Pipeline,
 
 923 So.2d at 97. Thereafter, the lists shall be certified to the board of review within three days in
 
 *347
 
 accordance with La. R.S. 47:1992 B. Accordingly, the plaintiff herein “will have ample opportunity to object, if necessary, to the local assessors’ valuations.”
 
 See ANR Pipeline,
 
 92B So.2d at 97-98.
 

 So concluding, we agree with the district court that the proper remedy is a remand to the LTC so that it can allow the parish assessors to assess the value of the plaintiffs properties for tax year 2006 and calculate taxes based on 15% of those assessments. Such relief complies with the mandates of La. Const, art. VII, § 18 and ensures that all natural gas pipeline companies, those operating intrastate and interstate, are treated identically. There will exist no differential treatment of instate and out-of-state economic interests that benefits the former and burdens the latter.
 
 See Oregon Waste,
 
 511 U.S. at 99, 114 S.Ct. 1345. A remand for reassessment, both as to rate and methodology, of properties owned by the plaintiff is a “just and equitable” remedy.
 
 See ANR Pipeline,
 
 923 So.2d at 98;
 
 Transcontinental Gas,
 
 2005-2604, 2005-2605 at p. 6 (unpublished).
 

 CONCLUSION
 

 For the foregoing reasons, we affirm that portion of the district court judgment partially granting the motion for summary judgment filed on behalf of the Assessors of Acadia, Cameron, East Baton Rouge, Iberia, Jefferson Davis, Lafourche, St. Landry, St. Martin, St. Mary, Vermilion, and Washington parishes, and ordering that
 
 ad valorem
 
 taxes on all pipeline property (whether operated in interstate or intrastate commerce) must be calculated at 15% of fair market value as determined by the assessors of the parishes within which the plaintiffs properties are located. We reverse that part of the district court judgment declining to consider the constitutionality of La. R.S. 47:1851 and render judgment declaring La. R.S. 47:1851 K unconstitutional and in violation of the Commerce Clause of the United States Constitution. We further render judgment declaring that inclusion of the phrase “pipeline company” in La. R.S. 47:1851 M is unconstitutional and in violation of the Commerce Clause of the United States Constitution; so finding, we order the phrase “pipeline company” be stricken from La. R.S. 47:1851 M. The relief requested in the answer filed by the Louisiana Tax Commission is denied. The parties to this appeal are to bear their own costs.
 

 JUDGMENT AFFIRMED IN PART; REVERSED IN PART; AND RENDERED. ANSWER TO APPEAL DENIED.
 

 [1]
 

 . Although the facts are fairly simple, the same cannot be said for the procedural history of this complex consolidated district court proceeding. Discrepancies in the pleadings and unusual legal process have created what can best be described as a legal labyrinth.
 

 [2]
 

 . In its petition, the plaintiff also challenged the
 
 ad valorem
 
 tax scheme under the Equal Protection and Due Process Clauses of the United States and Louisiana Constitutions, and the Uniformity Clause of the Louisiana Constitution. During oral argument, counsel for the plaintiff confirmed that the sole issue
 
 *336
 
 before this court is whether the Louisiana
 
 ad valorem
 
 tax scheme violates the Commerce Clause of the United States Constitution.
 

 [3]
 

 . The sheriffs and assessors named as defendants in this suit are: Sheriff Wayne Me-lancon, Acadia Parish; Sheriff Mike Wag-uespack, Assumption Parish; Sheriff Tony Mancuso, Calcasieu Parish; Sheriff Theos Duhon, Cameron Parish; Sheriff Greg Phares, East Baton Rouge Parish; Sheriff Sid Hebert, Iberia Parish; Sheriff Brent Al-lain, Iberville Parish; Sheriff Richard Edwards, Jr., Jefferson Davis Parish; Sheriff Michael Neustrom, Lafayette Parish; Sheriff Craig Webre, Lafourche Parish; Sheriff Paul Raymond Smith, Pointe Coupee Parish; Sheriff Gregory Champagne, St. Charles Parish; Sheriff Ronald Ficklin, St. Helena Parish; Sheriff Bobby Guidroz, St. Landry Parish; Sheriff Ronald J. Theriot, St. Martin Parish; Sheriff David A. Naquin, St. Mary Parish; Sheriff Daniel Edwards, Tangipahoa Parish; Sheriff Michael Couvillon, Vermilion Parish; Sheriff Aubrey Jones, Washington Parish; and Sheriff Mike Cazes, West Baton Rouge Parish, in their capacities as
 
 ex officio
 
 tax collectors in and for their respective parishes. Hon. Russel L. Benoit, Acadia Parish; Hon. Wayne P. Blanchard, Assumption Parish; Hon. Richard J. Cole, Jr., Calcasieu Parish; Hon. Robert E. Conner, Cameron Parish; Hon. Brian Wilson, East Baton Rouge Parish; Hon. Rickey J. Huval, Sr., Iberia Parish; Hon. James H. Dupont, Iberville Parish; Hon. Donald G. Kratzer, Jefferson Davis Parish; Hon. Conrad Comeaux, Lafayette Parish; Hon. Michael H. Martin, Lafourche Parish; Hon. James A. Laurent, Pointe Coupee Parish; Hon. Clyde A. Gisclair, St. Charles Parish; Hon. Wesley Blades, St. Helena Parish; Hon. Rhyn L. Duplechain, St. Landry Parish; Hon. Lawrence Patin, St. Martin Parish; Hon. Sherel A. Martin, Jr., St. Maty Parish; Hon. Joaquin Matheu, Tangipahoa Parish; Hon. Michael Langlinais, Vermilion Parish; Hon. M. Randall Seal, Washington Parish; and Hon. Barney Altazan, West Baton Rouge Parish, in their capacities as assessors in and for their respective parishes.
 

 [4]
 

 . The twelve assessors named as defendants who joined in answering the petition were: Hon. Russel L. Benoit, Acadia Parish; Hon. Richard J. Cole, Jr., Calcasieu Parish; Hon. Robert E. Conner, Cameron Parish; Hon. Brian Wilson, East Baton Rouge Parish; Hon. Rickey J. Huval, Sr., Iberia Parish; Hon. Donald G. Kratzer, Jefferson Davis Parish; Hon. Michael H. Martin, Lafourche Parish; Hon. Rhyn L. Duplechain, St. Landry Parish; Hon. Lawrence Patin, St. Martin Parish; Hon. Sherel A. Martin, Jr., St. Mary Parish; Hon. Michael Langlinais, Vermilion Parish; and Hon. M. Randall Seal, Washington Parish. Although not named as a defendant in this litigation, an answer also was filed on behalf of Hon. Gene P. Bonvillain, assessor of Terrebonne Parish.
 

 [5]
 

 .The eleven assessors named as defendants who joined in the motion for summary judgment were: Hon. Russel L. Benoit, Acadia Parish; Hon. Robert E. Conner, Cameron Parish; Hon. Brian Wilson, East Baton Rouge Parish; Hon. Rickey J. Huval, Sr., Iberia Parish; Hon. Donald G. Kratzer, Jefferson Davis Parish; Hon. Michael H. Martin, Lafourche Parish; Hon. Rhyn L. Duplechain, St. Landry Parish; Hon. Lawrence Patin, St. Martin Parish; Hon. Sherel A. Martin, Jr., St. Mary Parish; Hon. Michael Langlinais, Vermilion Parish; and Hon. M. Randall Seal, Washington Parish. Joining in the motion was the Hon. Gene P. Bonvillain, assessor of Terrebonne Parish, who answered the petition but was not named as a defendant. The Hon. Richard J. Cole, Jr., assessor of Calcasieu Parish, who joined with the other movers in answering the petition, did not join in the motion for summary judgment.
 

 [6]
 

 . The answer does not identify the parish with which Sheriff Sidney Gautreaux is affiliated.
 

 [7]
 

 . Clearly the reference to docket number 551,432 is a typographical error, as the judgment is captioned "JUDGMENT IN DOCKET NO. 551,435.” Notably, the judgment is not entered in favor of the Hon. Gene P. Bonvil-lain, Assessor of Terrebonne Parish, who answered the petition and joined in the motion but was not named by the plaintiff as a defendant.
 

 [8]
 

 . To the extent this court may lack appellate jurisdiction over all of the issues raised on appeal, we exercise our supervisory jurisdic-lion and consider die merits of the plaintiffs claims.
 
 See Hood v. Cotter,
 
 2008-0215, 2008-0237 (La.12/2/08), 5 So.3d 819, 823-824.
 

 [9]
 

 . A facially discriminatory tax may survive Commerce Clause scrutiny if it is, in fact, a compensatory tax designed to make interstate
 
 commerce
 
 bear a burden already borne by intrastate commerce. The state bears the burden of showing that the requirements of the compensatory tax doctrine are clearly met.
 
 Fulton Corp. v. Faulkner,
 
 516 U.S. 325, 331, 344, 116 S.Ct. 848, 133 L.Ed.2d 796 (1996). Herein, no argument has been advanced, nor evidence presented, that the
 
 ad valorem
 
 tax is a justifiable compensatory tax. Notably, the Supreme Court has stated that there is "doubt that such a showing can ever be made outside the limited confines of sales and use taxes.”
 
 Fulton,
 
 516 U.S. at 344, 116 S.Ct. 848.
 

 [10]
 

 . As noted
 
 by the Alabama Supreme Court in
 
 Ex parte Hoover, Inc.,
 
 956 So.2d 1149, 1153 (Ala.2006), dormant Commerce Clause analysis is not without criticism.
 
 See e.g., Camps Newfound/Owatonna, Inc. v. Town of Harrison,
 
 520 U.S. 564, 610, 117 S.Ct. 1590, 137 L.Ed.2d 852 (1997) (Thomas, J„ joined by Rehnquist, C.J., and Scalia, J., dissenting) ("The negative Commerce Clause has no basis in the text of the Constitution, makes little sense, and has proved virtually unworkable in application.”).
 

 [11]
 

 . A finding of facial discrimination eliminates the need for this court to evaluate whether the third
 
 Amerada Hess
 
 factor (undue burden on interstate commerce) is present.
 

 [12]
 

 . The plaintiff observes that airline and railroad companies, although classified as owning “public service properties,” are assessed at the lower 15% assessment of fair market value as determined by the LTC — not the local assessors. The United States Congress has elected to treat airline and railroad companies differently from pipeline companies. Specific federal legislation has been passed in regard to taxation of airline and railroad companies.
 
 See
 
 49 U.S.C. § 40116(2)(A); 49 U.S.C. § 11501(b). We are unaware of similar federal legislation in favor of natural gas pipeline companies. Moreover, because the plaintiff's properties will no longer be classified as "public service properties” for purposes of La. Const, art. VII, § 18, the plaintiff’s arguments regarding the alleged disparity in treatment between itself and other owners of “public service properties” is moot.
 

 [13]
 

 . In
 
 ANR Pipeline,
 
 this court evaluated the Louisiana
 
 ad valorem
 
 tax scheme in the context of equal protection and uniformity challenges. Therein, interstate natural gas pipeline companies that met the definition of "pipeline companies” owning "public service properties” were not being appraised and assessed in the same manner as intrastate pipeline companies that also met the definition of "pipeline companies” owning "public service properties.” Rather, the intrastate companies were being assessed as if they owned non-public service properties. This court determined that the appropriate remedy for a denial of uniformity in taxation "is to employ the same valuation and assessment methodology as that used to assess the preferred properties.”
 
 ANR Pipeline,
 
 923 So.2d at 97.