KIMBALL, Chief Justice.
|aThis is an appeal from a declaration of uneonstitutionality by the Louisiana First Circuit Court of Appeal. This court has jurisdiction over this appeal pursuant to La. Const, art. V, § 5(D). The plaintiffs include a number of interstate natural gas pipeline companies (“interstate companies”), and the defendants are the Louisi-
ana Tax Commission (“LTC”) and various local sheriffs and assessors throughout the State. At issue is whether the Louisiana ad valorem tax scheme, in particular La. R.S. 47:1851(K) & (M), violates the Commerce Clause of the United States Constitution by classifying rate-regulated interstate and intrastate natural gas pipeline companies as “public service property,” subject to ad valorem taxes on 25 percent (25%) of their property’s assessed fair market value, while non rate-regulated intrastate natural gas pipeline companies (“intrastate companies”) are classified as “other property,” subject to ad valorem taxes on 15 percent (15%) of their property’s assessed fair market value.
|sThe district court granted a partial motion for summary judgment finding the Louisiana ad valorem tax scheme’s assessment rates were unconstitutional in violation of the United States Commerce Clause. However, the district court found it unnecessary to rule on the constitutionality of the actual statutes in question, while granting relief in accordance with previous circuit case law concerning the remedy for unequal treatment under the tax scheme.[1] The court of appeal affirmed the decision of the district court that found the Louisiana ad valorem tax scheme’s assessment rates violate the Commerce Clause, but reversed the district court’s finding that it was unnecessary to rule on the constitutionality of the statutes in question. The court of appeal ruled that both La. R.S. 47:1851(K), which defines “pipeline company,” and the inclusion of the phrase “pipeline company” in the definition of “public service property” in La. *202 R.S.47:1851(M) violated the Commerce Clause of the United States Constitution.
After due consideration, the judgment of the district court finding the Louisiana ad valorem tax scheme’s assessment rates violate the Commerce Clause of the U.S. Constitution and the court of appeal’s finding that La. R.S. 47:1851(K) and the inclusion of “pipeline company” in La. R.S. 47:1851(M) is unconstitutional are hereby reversed. The plaintiffs failed to carry their burden of proof that the tax scheme discriminates against or burdens interstate commerce, because there is insufficient evidence in the record that the plaintiff companies actually pay higher taxes than the non rate-regulated intrastate companies with whom they compete.
_J¿The Louisiana Ad Valorem Tax Scheme
Article VII, § 18(B)[2] of the Louisiana Constitution, provides the classifications for property subject to ad valorem taxes and the percentage at which their assessed values are taxed. The classifications at issue in this case include: property classified as “public service properties,” assessed at a rate of 25 percent (25%) of its fair market value; and property classified as “other property,” assessed at a rate of 15 percent (15%) of its fair market value.[3] Article VII, § 18(B) goes on to provide that the legislature may enact laws to define “public service properties.” In accordance with this pronunciation, the legislature enacted La. R.S. 47:1851(M), which defines “public service properties” as “immovable, major movable, and other movable property owned or used but not otherwise assessed in this state in the operations of each ... pipeline company....”[4] The “public service property” classification then | ¡¡includes companies that qualify as “pipeline companies.” The Louisiana Legislature defined “pipeline company” in La R.S. 47:1851(K) as:
[A]ny company that is engaged in the business of transporting oil, natural gas, petroleum products, or other products within, through, into, or from this state, and which is regulated by (1) the Louisiana Public Service Commission, (2) the Interstate Commerce Commission, or (3) the Federal Power Commission, as a *203 “natural gas company” under the Federal Natural Gas Act, 15 U.S.C. §§ 717-717w, because that person is engaged in the transportation of natural gas in interstate commerce, as defined in the Natural Gas Act.
According to federal law, all interstate natural gas pipelines are subject to rate-regulation by the Federal Energy Regulatory Commission (“FERC”), which is the successor to the Federal Power Commission,[5] which in effect qualifies all interstate companies as “pipeline companies” under La. R.S. 47:1851(K) and thus “public service property” under La. R.S. 47:1851(M). Concerning intrastate companies, according to La. R.S. 30:551(A):
[T]he [Department of Natural Resources] shall be the authority to regulate natural gas and natural gas transporters ... as provided in this Chapter; provided, however, that the Louisiana Public Service Commission shall remain the authority to regulate the sale of natural gas moving by pipeline to local distributing systems for resale.
This statute provides that only intrastate companies that sell to local distributing systems are rate-regulated by the Louisiana Public Service Commission (“LPSC”). Thus, only those intrastate companies that sell to local distributing systems fall into the definitions of “pipeline company” and “public service property” under La. R.S. 47:1851(K) & (M). Therefore, both interstate companies and intrastate companies, who sell natural gas to local distributing systems, are assessed at 25 percent (25%) Rof their property’s fair market value as determined by the LTC, because they are regulated by the FERC or the LPSC, respectively, under La. R.S. 47:1851(K).
Intrastate pipeline companies that do not sell natural gas to local distributing systems for resale are not assessed at 25 percent (25%) of fair market value, because these companies do not fall within the definition of “pipeline company” in La. R.S. 47:1851(K), as they are not regulated by one of the designated agencies. Instead these companies are considered “other property” under La. Const, art. VII § 18(B). As such, these non rate-regulated intrastate companies are subject to a 15 percent (15%) assessment of fair market value to be performed by each local parish assessor in the parishes in which their property rests.
As to the methodology used in determining the fair market value of property subject to ad valorem taxation, La. Const, art. VII, § 18(D) provides that “[e]ach assessor shall determine the fair market value of all property subject to taxation within his respective parish or district except public service properties, which shall be valued at fair market value by the Louisiana Tax Commission or its successor.” Therefore, all “public service properties” are subject to taxes on 25 percent (25%) of the fair market value of their property as determined centrally by the LTC. The LTC then apportions to each parish taxing unit its respective share of the fair market value of the property and it is taxed at the given rate. See La. R.S. 47:1855(A). All remaining unclassified property subject to ad valorem taxation located in Louisiana is considered “other property” and is subject to taxes on 15 percent (15%) of its fair market value as determined by the individual parish assessors in each parish in which the property is located.
REACTS AND PROCEDURAL HISTORY
The substantive facts of these consolidated cases are largely undisputed. Plain *204 tiffs are all interstate natural gas pipeline companies, who own and operate natural gas pipelines located in part in Louisiana. Each plaintiff is challenging their property’s assessed valuation for payment of Louisiana ad valorem taxes for years 2005 and 2006.[6] The instant suit is composed of two appeals from the Louisiana First Circuit Court of Appeal, which have been consolidated in this court because they concern the same issue of law and the same disposition from the court of appeal.
Each plaintiff is classified as a “pipeline company,” as defined in La. R.S. 47:1851(K). As “pipeline companies,” the plaintiffs are classified as “public service property,” pursuant to La. R.S. 47:1851(M). As “public service property” the plaintiffs are subject to ad valorem tax based on 25 percent (25%) of the assessed fair market value of their property in Louisiana as determined centrally by the LTC. La. Const, art. VII, § 18(B).
The plaintiffs all paid their ad valorem taxes under protest for the years in dispute and alleged “the Louisiana ad valo-rem tax scheme is unconstitutional, in violation of the [Commerce Clause], in that it imposes an impermissible burden on interstate commerce by imposing a greater tax burden on interstate natural gas pipeline companies than it does upon intrastate natural gas pipeline companies.”
|sThese claims arise because certain intrastate natural gas pipeline companies, who compete with plaintiffs in the Louisiana natural gas transportation market, do not qualify as “pipeline companies” under La. R.S. 47:1851(K). As such, they are not “public service properties,” but instead fall into the category of “other property” in La. Const, art. VII, § 18(B). As “other property,” these intrastate companies are subject to ad valorem taxes on 15 percent (15%) of their property’s assessed fair market value as determined individually by each parish assessor in the parishes in which their property is located.
Named defendants include the Louisiana Tax Commission; Elizabeth Guglielmo, in her capacity as chairperson of the LTC; and various sheriffs and assessors from parishes throughout Louisiana. Each of these two consolidated cases were independently consolidated with district court docket number 491,458 (Transcontinental Gas Pipe Line Corporation, et al. v. Louisiana Tax Commission, et al.). Since 2002, various independent suits have been filed by the plaintiffs and other interstate companies against the LTC, local sheriffs, and parish assessors and have been consolidated with Transcontinental (491,453), all alleging the unconstitutionality of the Louisiana ad valorem tax scheme and requesting refunds for taxes paid in each year. *205 The instant case only involves the named defendants and the tax years 2005 and 2006.
In the consolidated cases at issue here, the defendant assessors and sheriffs filed Motions for Summary Judgment requesting the Louisiana ad valorem tax scheme be declared constitutional. In the alternative, the sheriffs, assessors, and the LTC requested of the court, “to the extent the Court finds that the Louisiana ad valorem tax scheme is unconstitutional, specifically denoting and striking the unconstitutional statutory provisions and declaring how pipeline company properties |9are to be assessed in the future ...”
The district court judge signed two written declaratory judgments in both cases, on December 12, 2008, containing the same disposition. The district court found the imposition of the 25 percent (25%) assessment rate on interstate pipelines and the imposition of a 15 percent (15%) assessment rate on some competing intrastate pipelines violated the Commerce Clause of the United States Constitution. In fashioning a remedy, the district court followed the decisions in Transcontinental Gas Pipe Line Corporation, et al. v. Louisiana Tax Commission, et al, 05-2604 (La.App. 1st Cir.3/31/06), 925 So.2d 777 (unpublished), writ denied, 06-0988 (La.9/1/06), 936 So.2d 204; and ANR Pipeline Co., et al. v. Louisiana Tax Commission, et al., 05-1142 (La.App. 1st Cir.9/7/05), 923 So.2d 81, writ denied, 05-2372 (La.3/17/06), 925 So.2d 547, cert. denied, 549 U.S. 822, 127 S.Ct. 157, 166 L.Ed.2d 38, finding the case should be remanded to the Louisiana Tax Commission with instructions requiring the LTC to order the local parish assessors to reassess the fair market value of plaintiffs’ properties parish by parish using their method of appraisal for the years at issue and to apply taxes on only 15 percent (15%) of the values attained.[7] The trial court stopped short of ruling on the constitutionality of the individual statutes, finding it was unnecessary due to the relief granted and considering the well settled principle 11fíthat a court should not reach or determine constitutional issues unless, in the context of a particular case, the resolution of such issues is necessary to decide the case. ANR Pipeline v. Louisiana Tax Commission, 2005-1142 (La.App. 1 Cir. 9/7/05), 923 So.2d 81, 99. The defendants asked that this partial summary judgment be designated a final partial summary judgment for purposes of appeal pursuant to La. C.C.P. art. 1915(B). Thereafter, both the plaintiffs and the defendants filed *206 notices of appeal.[8]
The plaintiffs suspensively appealed this judgment to both the Louisiana First Circuit Court of Appeal and to this court simultaneously. In a per curiam, this court dismissed all of the plaintiffs’ appeals and transferred them to the court of appeal for consideration on the merits stating, “Article V, § 5(D) of the Louisiana Constitution of 1974 vests appellate jurisdiction in this court in cases in which ‘a law or ordinance has been declared unconstitutional.’ Nothing in the district court’s judgment declared a law or ordinance unconstitutional.” Florida Gas Transmission Co. v. Louisiana Tax Commission, et al., 09-0729 (La.5/15/09), 10 So.3d 1219, 1220 (per curiam). See also Centerpoint Energy Mississippi River Transmission Corp. v. Louisiana Tax Commission, 2009-0730 (La.5/15/09), 10 So.3d 1221 (per curiam); Transcontinental Gas Pipe Line Corp., et al. v. Louisiana Tax Commission, et al., 2009-0731 (La.5/15/09), 10 So.3d 1221 (per curiam); Florida Gas Transmission Co. v. Louisiana Tax Commission, 2009-0732 (La.5/15/09), 10 So.3d 1221 (per curiam); Centerpoint Energy Gas Transmission Co. v. Louisiana Tax Commission, 2009-0733 (La.5/15/09), 10 So.3d 1222 (per curiam). Because this issue was already pending before them in the simultaneously filed appeal, the First Circuit dismissed the appeal transferred from this court as moot, as the case already before them had been |T1 answered by the LTC and also included the defendants’ appeals.
The court of appeal reviewed the matter de novo as it was on appeal from a motion for summary judgment. The court of appeal analyzed the Louisiana ad valorem tax scheme under dormant Commerce Clause jurisprudence. Oklahoma Tax Commission v. Jefferson Lines, Inc., 514 U.S. 175, 179, 115 S.Ct. 1331, 131 L.Ed.2d 261 (1995). The court of appeal stated, “All parties agree that the natural gas pipeline companies operating in Louisiana, both those operating intrastate and interstate, are direct competitors and similarly situated; therefore, dormant Commerce Clause analysis is appropriate.” Transcontinental Gas Pipe Line Corp., et al. v. Louisiana Tax Commission, et al., 09-0628 (La.App. 1 Cir. 8/10/09), 23 So.3d 329, 340. The court examined the ad valorem tax assessment procedures under the Amerada Hess factors: “A state tax discriminates against interstate commerce if it: (1) is facially discriminatory; (2) has a discriminatory intent; or (3) has the effect of unduly burdening interstate commerce.” Id. at 342.(citing Amerada Hess Corp. v. Director, Division of Taxation, New Jersey Department of the Treasury, 490 U.S. 66, 109 S.Ct. 1617, 104 L.Ed.2d 58 (1989)). While acknowledging the defendant-assessor’s arguments that the higher tax assessment is not based on whether the pipeline company is engaged in intrastate or interstate commerce, but on whether the pipeline company is rate-regulated or non rate-regulated, the court of appeal stated, “... states have large leeway to establish classifications that produce a reasonable system of taxation. The right to create classifications, however, is not without restraint, and a classification cannot be maintained if it results in a violation of the United States Commerce Clause.”
Citing the U.S. Supreme Court in Maine v. Taylor, the court of appeal stat *207 ed, “Once a state law is shown to discriminate either on its face or in practical effect, the |, .¿burden falls on the state to demonstrate that the statute serves a legitimate local purpose that cannot be achieved in a less discriminatory way.” Transcontinental Gas Pipe Line Corp., et al. v. Louisiana Tax Commission, et al, 09-0628, p. 8 (La.App. 1 Cir. 8/10/09), 28 So.3d 329, 344 (citing Maine v. Taylor, 477 U.S. 131, 138, 106 S.Ct. 2440, 91 L.Ed.2d 110 (1986)). In ultimately finding the Louisiana ad valo-rem tax scheme facially discriminatory[9] against interstate commerce, the court stated, “the record before us offers no adequate proof of either a legitimate local purpose or of the absence of nondiscriminatory alternatives such as might defeat the strict scrutiny accorded a facially discriminatory scheme.” Id.
In finding the tax scheme unconstitutional, the court of appeal reversed that part of the district court judgment that found it unnecessary to consider the constitutionality of La. R.S. 47:1851(E) and (M). In so doing, the court of appeal declared La. R.S. 47:1851(K) unconstitutional in its entirety, and also found the inclusion of “pipeline company” in the definition of “public service property” in La. R.S. 47:1851(M) to be unconstitutional as well. As such, the court of appeal ordered that “pipeline company” be stricken from La. R.S. 47:1851(M), leaving the rest of the statute in effect.
The court of appeal affirmed the remedy granted by the district court, ordering the LTC to require the local parish assessors to reassess the fair market value of the plaintiffs’ properties in each parish using the local method of appraisal and the 15 percent (15%) assessment rate in determining their ad valorem taxes in accordance with the remedies granted in previous First Circuit cases Transcontinental Gas Pipeline, 925 So.2d 777 and ANR Pipeline, 923 So.2d 81.
11sThe defendants collectively appealed the court of appeal’s decisions to this court seeking a reversal of the declaration of unconstitutionality. The plaintiffs answered the appeal and cross appealed seeking a modification of the remedy from this court. In particular, plaintiffs request no reassessment by the local parish assessors be ordered, because as “public service properties” the plaintiffs are entitled to central assessment by the LTC. Plaintiffs pray that the 15 percent (15%) assessment rate be applied to their already assessed fair market values previously determined by the LTC, and a refund be ordered for the difference between the 15 percent (15%) and the 25 percent (25%) valuation for the disputed tax years.
DISCUSSION
As a preliminary matter, this issue comes before us pursuant to this court’s appellate jurisdiction under La. Const, art. V, § 5(D), which states “a case shall be appealable to the supreme court if ... a law or ordinance has been declared unconstitutional.” This court must now review the court of appeal’s finding that the Louisiana ad valorem tax scheme is unconstitutional and, if necessary, the remedy imposed by the district court and affirmed by the court of appeal.
In this case, the district court’s and the court of appeal’s actions concerning the constitutionality of the Louisiana ad valorem tax scheme were pursuant to *208 motions for summary judgments. A motion for summary judgment will be granted “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(B). The summary judgment procedure is favored in Louisiana and is designed to secure the just, speedy, and inexpensive determination of actions. La. C.C.P. art. 966(A)(2). Appellate courts review a judgment granting or denying a motion for summary ^Judgment de novo. Bonin v. Westport Ins. Corp., 05-0886, p. 4 (La.5/17/06), 930 So.2d 906, 910. Thus, appellate courts must ask the same questions the trial court does in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. Hood v. Cotter, 08-0215 (La.12/2/08), 5 So.3d 819, 824. We now turn to the merits of this Commerce Clause challenge.
The Commerce Clause of the United States Constitution gives to Congress the power “[t]o regulate commerce ... among the several States.” U.S. Const. Art. I, § 8, cl. 3. The Commerce Clause has also been interpreted to carry a negative implication known as the dormant Commerce Clause, which seeks to prevent States from engaging in economic protectionism by economically benefitting instate interests while burdening out-of-state competitors. See Department of Revenue of Kentucky v. George W. Davis, 553 U.S. 328, 128 S.Ct. 1801, 1808, 170 L.Ed.2d 685 (2008); New Energy Co. of Ind. v. Limbach, 486 U.S. 269, 273-274, 108 S.Ct. 1803, 100 L.Ed.2d 302(1988). “[I]n the absence of actual or prospective competition between the supposedly favored and disfavored entities in a single market there can be no local preference, whether by express discrimination against interstate commerce or undue burden upon it, to which the dormant Commerce Clause may apply.” General Motors Corp. v. Tracy, 519 U.S. 278, 300, 117 S.Ct. 811, 825, 136 L.Ed.2d 761 (1997). In the instant matter, the record shows and the parties agree that both the interstate and intrastate companies are similarly situated entities who compete directly in a portion of the Louisiana natural gas transportation market. Thus, analysis under the dormant Commerce Clause is warranted.
In determining whether a state tax violates the dormant Commerce Clause, the U.S. Supreme Court has used a four part test. A state tax will not be sustained “unless |ir,the tax: (1) has a substantial nexus with the State; (2) is fairly apportioned; (3) does not discriminate against interstate commerce; and (4) is fairly related to the services provided by the state.” Maryland v. Louisiana, 451 U.S. 725, 753, 101 S.Ct. 2114, 2133, 68 L.Ed.2d 576 (1981). The Louisiana ad valorem tax scheme is not being challenged on its substantial nexus with the state or its fair apportionment, nor have the plaintiffs in this case alleged that the tax scheme has a discriminatory intent. The Commerce Clause challenge only alleges that the scheme discriminates against interstate commerce.
According to the Amerada Hess case, a state tax is discriminatory against interstate commerce “if it is facially discriminatory, has a discriminatory intent, or has the effect of unduly burdening interstate commerce.” Amerada Hess, 490 U.S. at 75, 109 S.Ct. at 1623. As noted above, the plaintiffs do not allege the tax scheme has a discriminatory intent. Therefore, this court needs to determine (1) if the tax scheme is facially discrimina *209 tory or (2) if it imposes an undue burden on interstate commerce.

Does the Louisiana Ad Valorem Tax Scheme Facially Discriminate Against Interstate Commerce?

The first step in dormant Commerce Clause analyses is to determine whether the challenged law discriminates against interstate commerce on its face or rather whether it regulates evenhandedly with only “incidental” effects on interstate commerce. Oregon Waste Systems v. Department of Environmental Quality of the State of Oregon, 511 U.S. 93, 99, 114 S.Ct. 1345, 1350, 128 L.Ed.2d 13 (1994). Discrimination has been defined in this context as “differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter.” Id. According to the U.S. Supreme Court case Pike v. Bruce Church, Inc., “Where a statute regulates even-handedly to effectuate a legitimate local public interest, and its | ^effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.” 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970).
To be facially discriminatory, the relevant statutes must facially benefit instate interests over out-of-state interests or give some benefit to intrastate companies that it does not give to interstate companies. In South Central Bell Telephone Co. v. Alabama, the U.S. Supreme Court declared an Alabama tax unconstitutional as facially discriminatory against interstate commerce, where the tax allowed domestic corporations to be taxed at one percent (1%) of the par value of their stocks, while foreign corporations were taxed at .3 percent (.3%) of the value of the actual amount of capital employed. 526 U.S. 160, 119 S.Ct. 1180, 143 L.Ed.2d 258 (1999). The Court found the differential treatment of foreign corporations subjected them to a higher tax burden due to the base values used. The domestic corporations could control their tax burden by setting the par value of their stocks at whatever level they chose, while the foreign corporations were required to use a value based on the firm’s financial status. The statute involved specifically provided for a difference in tax treatment based on whether the corporation was organized in the state or was a foreign corporation, and the difference served to benefit the domestic corporations by allowing them to lower their taxes by lowering their tax base where foreign corporations did not have the same option.
Further, in Fulton Corp. v. Faulkner, the U.S. Supreme Court found a North Carolina intangibles tax to be facially discriminatory where the tax was inversely proportional to the percentage of state income tax to which the corporation was exposed. 516 U.S. 325, 116 S.Ct. 848, 133 L.Ed.2d 796 (1996). The Court reasoned this tax facially favored those businesses doing business in-state by allowing them to |17decrease their tax liability by the amount of state tax to which they were exposed. This arrangement favored in-state interests as it encouraged companies to do more business in the state to lower their tax burden, which as a result discouraged interstate commerce.
In Camps Newfound/Owatonna, Inc. v. Town of Harrison, the Supreme Court struck down a Maine property tax exemption aimed at local charitable camps that served a larger proportion of in-state residents than out of state residents. 520 U.S. 564, 117 S.Ct. 1590, 137 L.Ed.2d 852 (1997). The Court found the statute facially discriminated against interstate commerce by offering a tax benefit to camps that served primarily intrastate clientele, *210 while denying the same benefit to camps that served predominantly interstate clients. The court found the statute per se invalid, and stated, “State laws discriminating against interstate commerce on their face are ‘virtually per se invalid.’ ” Id. at 575, 1598, 117 S.Ct. 1590 (quoting Fulton Corp. v. Faulkner, 516 U.S. 325, 331, 116 S.Ct. 848, 854, 133 L.Ed.2d 796 (1996)).
The above cases are readily distinguishable from the instant matter. La. R.S. 47:1851(K), the statute in question, states:
“Pipeline company” means any company that is engaged primarily in the business of transporting oil, natural gas, petroleum products, or other products within, through, into, or from this state, and which is regulated by (1) the Louisiana Public Service Commission, (2) the Interstate Commerce Commission, or (3) the Federal Power Commission, as a “natural gas company” under the Federal Natural Gas Act, 15 U.S.C. §§ 717-717w, because the person is engaged in the transportation of natural gas in interstate commerce, as defined in the Natural Gas Act.
Regulatory status is the factor that determines what is considered a “pipeline company,” not interstate or intrastate character like in the South Central Bell case. Nor do these statutes in conjunction grant some benefit to in-state companies over out-of-state companies as in Fulton and Camps Newfound. This statute simply classifies | lsnatural gas pipeline companies based on their regulatory status. Both interstate and intrastate companies are affected equally by this rule, as under this statute, any rate-regulated pipeline company transporting gas in this state falls under the classification of a “pipeline company,” whether or not the company is interstate or intrastate. Both interstate and intrastate companies that qualify as “pipeline companies” are also classified as “public service properties” and are taxed on 25 percent (25%) of their property’s fair market value. While, under Louisiana law only those pipeline companies that sell to local distributing systems are rate-regulated, and under Federal law, all interstate natural gas pipelines are rate-regulated, this is an incidental effect of the classification due to preemption of federal law, and not a patent facial discrimination against interstate commerce.[10]
Considering that the ad valorem tax rate is in reality based on whether the pipeline company is subject to rate-regulation by the FERC or the LPSC, a rule which applies equally to both intrastate and interstate companies and does not base classification on whether the company operates intrastate or interstate, we find the tax scheme is not discriminatory on its face, and conclude the court of appeal erred in so finding. Further, even if this court found that the statutes facially treat interstate companies differently than some intrastate companies, this differential treatment would not rise to the level of discrimination because, as explained below, the plaintiffs have not proven they are paying more in taxes than the intrastate companies. To have discrimination the intrastate companies must benefit from the differential treatment. See Oregon Waste Systems, 11 U.S. at 99, 114 S.Ct. at 1350. Since we find the tax scheme does not discriminate against interstate commerce on its face and that the | ^statutes regulate *211 even handedly, the next question we must answer is whether or not the incidental effects of the tax scheme in its practical operation serve to burden interstate commerce.

Does the Louisiana Ad Valorem Tax Scheme Place an Undue Burden on Interstate Commerce?

We now turn to whether the Louisiana ad valorem tax seheme burdens interstate commerce as it is applied. While the Louisiana ad valorem tax scheme does not discriminate against interstate commerce on its face, when determining the tax scheme’s possible burden on interstate commerce, the practical effect of the rule’s classifications cannot be ignored. In determining the constitutionality of a state tax scheme, “[the] state tax must be assessed in light of its actual effect considered in conjunction with other provisions of the State’s tax scheme. ‘In each case it is [the court’s] duty to determine whether the statute under attack ... will in its practical operation work discrimination against interstate commerce.’ ” Maryland v. Louisiana, 451 U.S. at 756, 101 S.Ct. at 2135 (quoting Best & Co. v. Maxivell, 311 U.S. 454, 455-456, 61 S.Ct. 334, 335, 85 L.Ed. 275 (1940)).
Under the Federal Natural Gas Act,[11] all interstate natural gas pipeline companies are rate-regulated by the Federal Energy Regulatory Commission, making all interstate companies “pipeline companies,” and thus “public service properties.” According to Louisiana law, in particular La. R.S. 30:551(A), the only intrastate companies that are subject to rate-regulation by the LPSC and qualify as “pipeline companies,” and thus “public service property,” are the companies that sell to local distributing systems. All other intrastate natural gas pipeline companies are considered “other property.” Therefore, while only some intrastate natural gas laopipeline companies are considered “public service property,” all interstate natural gas pipeline companies are considered “public service property.” The scheme places some, but not all, competing intrastate companies into the “pipeline company” and thus “public service property” classification along with the interstate companies, all of which are assessed centrally by the LTC based on 25 percent (25%) of their fair market value. The remaining intrastate companies who do not sell gas to local distributing systems but still compete with interstate companies in certain markets are considered “other property” and are assessed at the parish level using a 15 percent (15%) assessment of their fair market value.
At first glance, it would seem the Louisiana ad valorem tax scheme places a higher overall tax burden on interstate companies by taxing all interstate companies and only some intrastate companies at 25 percent (25%) of their property’s fair market value, while taxing the remaining intrastate companies at 15 percent (15%) of their property’s fair market value. If this were all the statutes provided for, our inquiry would seem to be at an end, and this tax classification scheme would appear to burden interstate commerce. However, the tax scheme provides for other differences in treatment of the two classes of properties as well.
In addressing the entities and methods used to determine the above mentioned fair market values, La. Const, art. 7 § 18(D) also states, “Each [parish] assessor shall determine the fair market value of all property subject to taxation within his respective parish or district except public service properties, which shall be *212 valued at fair market value by the Louisiana Tax Commission or its successor.”
The interstate and intrastate companies that are assessed at 25 percent (25%) of their fair market value, “public service properties,” are statutorily required to be assessed centrally by the Louisiana Tax Commission. See La. R.S. 47:1853. The 121 Louisiana Legislature saw fit to require that “public service properties” due to their nature as “public service properties” should be appraised according to a certain method by the LTC. When appraising “public service property,” the LTC utilizes a combination of all three of the nationally recognized techniques of appraisal as listed in La. R.S. 47:1853(B).[12] For pipelines, the LTC has adopted the “unit” method, in which the entire operating property is valued as a unit without functional or geographic division of the whole, considering the income the property produces. The record reflects that the method adopted by the LTC in valuing “public service property” is a method typically used in approximately 35 other states. The benefit of such an operation is that an appraiser is viewing the entire operation considering all of the parts, and not just individual contributions of some parts of the whole. Using this approach, an appraiser looks to the value of the business itself or the going concern of the company, and not just the hard assets of the company. The record also reflects that this method is a proper assessment method for rate-regulated entities that qualify as “public service property,” which includes interstate companies and intrastate companies who sell to local distributing systems, as it only makes sense to appraise the property in this manner, because they report to and are rate-regulated as an entirej^unit by the FERC or the LPSC respectively.
The remaining intrastate companies, which are assessed at 15 percent (15%) of their fair market value, are assessed by the various parish assessors in each parish in which their property is located using a different method than the LTC, the “cost approach.”[13] The parish assessors use the depreciated replacement cost of the property located within their parish to determine its fair market value, utilizing guidelines promulgated by the LTC. This method looks at what it would cost to replace the assessed property new less depreciation. The record reflects that this method used by the parish assessors, replacement cost new less depreciation, is *213 more appropriate for non rate-regulated entities. In contrast, the unit method used by the LTC, utilizes as part of its calculation the original replacement cost, and not the replacement cost new, due to the nature of rate-regulated common carriers that it is meant to assess.
Considering the practical effects of the Louisiana ad valorem tax scheme, to prove an undue burden on interstate commerce, the plaintiffs would need to show they are paying more taxes than are their intrastate competitors. The plaintiffs would need to show that 15 percent (15%) of the fair market value of property valued using the depreciated replacement cost approach is in fact less than 25 percent (25%) of the fair market value of property valued using the unit method. Absent this showing, there can be no conclusion that intrastate companies are benefitting from the application of the Igjtax scheme. If intrastate companies are not benefitting by paying a lower tax than the interstate companies then there is no negative effect or burden on interstate commerce. Absent this showing, plaintiffs have not shown an undue burden on interstate commerce.
There is no evidence in the record showing that the interstate companies are paying more ad valorem tax than are their unregulated intrastate competitors. To the contrary, there is some indication in the record that the cost approach, utilized by the parish assessors, regularly values property higher than property which has been valued on the unit method, depending on whether the value is adjusted for economic obsolescence. The record further reflects that parish assessors normally do not account for economic obsolescence absent extraordinary circumstances, as they are not required to consider that factor under § 1305(G) of the LTC guidelines.[14] The indication is that while the local assessors are obligated to follow the guideline charts for different sizes and types of pipes, they are allowed great discretion in determining other factors such as obsolescence, and normally do not even take that factor into consideration absent an extraordinary showing. Economic obsolescence is important to the unitary method of appraisal of rate-regulated companies by the LTC, because rate-regulated entities are capped in the amount of earning capability they can derive from a particular piece of property. There is some expert testimony indicating that if all factors, including economic obsolescence, are taken into account for both methods of appraisal, the values from the two different methods, at best should approach each other. The overall implication from the record, however, is that, | ^typically, the method currently used by the parish assessors to assess the fair market value of pipes within their parishes comes out higher than the method used by the LTC, such that the plaintiffs’ tax burden could likely increase if they were treated like their claimed favored competitors, the unregulated intrastate companies.[15] When specifically *214 asked which method currently results in a higher tax burden, no expert could give a definitive answer.
This may be an imperfect appraisal system, as appraisal is an imperfect science to begin with, but interstate commerce is simply not burdened if the interstate companies are actually paying less than they would if they were valued like their claimed favored intrastate competitors. Furthermore, it is not the appraisal system that is under attack in this case, it is the effect of the Louisiana ad valorem tax scheme on interstate commerce as it is currently being applied. The question is not how the tax scheme might work if the intrastate company appraisals were performed using another method, but if the tax scheme as it is being applied currently serves to burden interstate commerce.
The plaintiffs have argued that fair market value is fair market value, and it has only one definition in Louisiana, found in La. R.S. 47:2321, which reads, “the price for property which would be agreed upon between a willing and informed buyer and a willing and informed seller under usual and ordinary circumstances ...” The li>fiplaintiffs suggest fair market value should be viewed as a constant, and that assessing interstate companies at 25% of fair market value and some intrastate companies at 15% of fair market value runs afoul of the Commerce Clause of the U.S. Constitution, as an undue burden on interstate commerce. If fair market value were perfectly attainable or if it were a constant, the plaintiffs may well be correct. However, this ignores the practical effect of Louisiana’s ad valorem tax scheme as a whole. The scheme calls for different methods of appraisal to be used by the LTC and local parish assessors in determining fair market value, because in reality they are valuing different aspects of the properties. The parish assessors are only valuing portions of physical pipeline situated within their parish, and do not commonly look to the income of the business or any other factor not attributable to their parish. The LTC is valuing an entire pipeline operation as a whole considering all of the factors available to it, including economic obsolescence and overall income. In fact, La. R.S. 47:1853(D)[16] specifically prohibits the LTC from valuing the actual property rather than the company itself. There is only one definition of fair market value, but it applies to separate classifications differently. What a willing buyer would pay for a particular piece of pipe in one parish, and the apportioned value of a certain amount of pipe in a parish based on what a willing buyer would pay for an entire pipeline transportation business throughout the state might be quite different. Since the law calls for these different methods of assessments, it would not be proper to ignore the effect of the differing classifications of property and the methods by which the Louisiana Legislature has chosen to assess them in interpreting the tax scheme’s overall effect on interstate commerce.
Obviously, if the plaintiffs were granted a 15 percent (15%) assessment rate on *215 12fifair market value as determined by the LTC, their tax liability would go down, which is precisely what they seek. However, the question here is not whether their tax obligation is too high, but if it is more than that of intrastate competitors. If 25 percent (25%) of the fair market value of property valued at the unit method is in fact more than 15 percent (15%) of the fair market value of property valued at the depreciated replacement cost, the scheme would burden interstate commerce, because the end costs of the excess tax would be born by out-of-state customers, while purely instate companies could charge a lower price benefitting customers in Louisiana. However, the record contains no definite evidence that determines which assessment methodologies would yield higher taxes or which classification is paying more ad valorem tax. As the plaintiffs allege the unconstitutionality of the statutes based on an undue burden on interstate commerce, it is their burden to introduce evidence demonstrating such a burden. They have failed to sustain their burden.
In South Central Bell, supra, the U.S. Supreme Court had undisputed evidence that the average domestic corporation was paying one-fifth of the franchise tax it would have paid if treated as a foreign corporation. 526 U.S. at 169, 119 S.Ct. at 1186. This court is presented no such evidence on the relative tax burdens of interstate and intrastate companies in this case. In fact, the indication from the record is that the tax burden on the interstate companies might go up if they were treated like the unregulated intrastate companies of which they complain.
Ultimately, it is unclear from the record which entities are taxed more, “public service properties” or unregulated intrastate pipelines, given not only the percentage of fair market value considered, but also the assessment method to determine the fair market value of the property at issue. When considering whether the Louisiana ad valorem tax scheme burdens interstate commerce, it must be clear intrastate companies 127are actually benefitting by ultimately paying a lower tax than the interstate companies. Otherwise, if the companies are paying equal amounts or if these intrastate companies who do not qualify as “public service property” are paying more tax, there is no negative effect on interstate commerce. The tax scheme does treat interstate companies differently than some intrastate companies; however, it does not follow that this is discrimination or a burden on interstate commerce unless the intrastate companies somehow benefit from the differential treatment. Due to the absence of evidence as to whether 25 percent (25%) of fair market value of property assessed by the LTC is more than 15 percent (15%) of fair market value of property assessed by the local parish assessors, this court simply cannot conclude the Louisiana ad valorem tax scheme discriminates against or burdens interstate commerce.
The U.S. Supreme Court has recognized that “the States have broad discretion to configure their systems of taxation as they deem appropriate.” Oregon Waste Systems, 511 U.S. at 108, 114 S.Ct. at 1354-1355. Further, “Legislative classifications in tax matters are presumptively valid, the burden being on the challenger to prove that such a classification does not rest upon a reasonable basis, and will not be disturbed by the judiciary in the absence of unreasonable, discriminatory, or arbitrary action.” Bel Oil Corp. v. Roland, 242 La. 498, 137 So.2d 308, 314 (1962). The Louisiana Legislature has an interest in creating classifications for tax purposes along reasonable lines, this includes whether or not a business is rate-regulated by a government agency. This legitimate clas- *216 sifieation would indeed be unconstitutional if the classification and subsequent tax served to burden interstate commerce, however, in this case, the plaintiffs have not overcome the presumption of validity, as the plaintiffs failed to show the tax scheme in practical effect actually serves to place any burden whatsoever on interstate commerce.
128The United States Supreme Court, in General Motors Corp. v. Tracy, upheld an Ohio tax against a Commerce Clause challenge from out-of-state independent marketers of natural gas alleging that tax exemptions granted to local distribution companies (“LDCs”) and not to independent marketers violated the Commerce Clause. 519 U.S. 278, 117 S.Ct. 811, 136 L.Ed.2d 761 (1997). In General Motors, the Ohio tax exemption was granted to regulated public utilities that met the definition of “natural gas company.” The Ohio laws were interpreted such that local distribution companies met the definition of “natural gas companies,” but non-LDC gas companies and independent marketers did not. Id. at 283, 117 S.Ct. at 816. The practical effect of such classification was all LDCs, which were all located in Ohio, got the benefit of the tax credit, while all other companies did not, which included some intrastate and all out-of-state companies. Id. at 288, 117 S.Ct. at 819. Ultimately, the Court upheld the tax, because they found the LDCs and independent marketers did not actually compete in the same captive market. The Court recognized the possibility of competition in the non-captive market, however there was no evidence submitted on that issue. In reaching this conclusion, the Court recognized that the judiciary is ill-equipped to develop Commerce Clause doctrine on predictive judgments about possible real world economic effects. Id. at 309, 117 S.Ct. at 829. In finding the Ohio tax did not facially discriminate against interstate commerce, the Court also stated, “we have never deemed a hypothetical possibility of favoritism to constitute discrimination that transgresses constitutional demands.” Id. at 311, 117 S.Ct. at 830 (citing Associated Industries of Mo. v. Lohman, 511 U.S. 641, 654, 114 S.Ct. 1815, 1824, 128 L.Ed.2d 639 (1994)).
While this case can be distinguished from the instant matter in that the Court in General Motors found the plaintiffs and the claimed favored entities did not compete significantly in the same market, the Court declined to consider the hypothetical |a3arguments about the possible tax consequences on other markets in rendering their decision. As here, this Court cannot assume that discrimination is taking place based on the theoretical basis of fair market value and not its real world, real dollar application. Fair market value cannot be determined without an assessment, and the statutes provide a particular method and entity to perform that method of assessment for each classification. “Public service property” is assessed by the LTC using the unit method of assessment, and “other property” is assessed locally using the depreciated replacement cost. To observe the difference in percentages of fair market value, and ignore the difference in methodology to determine fair market value is to ignore the practical effect of the Louisiana ad valorem tax scheme. As the U.S. Supreme Court observed, a court must assess a state tax “in light of its actual effect considered in conjunction with other provisions of the State’s tax scheme.” Maryland v. Louisiana, 451 U.S. at 756, 101 S.Ct. at 2134.
Absent a showing that the differential treatment caused by the tax scheme’s classifications somehow benefits intrastate companies at the expense of interstate companies, this Commerce Clause challenge cannot succeed. In order to show *217 this, the plaintiffs must prove they would pay lower taxes on their property if they were treated in the same manner as the claimed favored intrastate companies, being assessed locally in each parish in which their property is located by the local parish assessors at a rate of 15 percent (15%) of fair market value. Only on this showing can the determination be made that there is sufficient evidence to show the Louisiana ad valorem tax scheme actually burdens interstate commerce. Plaintiffs have not met their burden of proving the Louisiana ad valorem tax scheme burdens interstate commerce.
| .^CONCLUSION
Because we find there is insufficient evidence to conclude that the Louisiana ad valorem tax scheme in its practical application benefits intrastate companies over interstate companies, we find the plaintiffs have failed to carry their burden that the Louisiana ad valorem tax scheme unduly burdens interstate commerce. As such, on the showing made, we conclude the Louisiana ad valorem tax scheme is not unconstitutional under the Commerce Clause of the U.S. Constitution.
For the reasons set forth above, the court of appeal’s decision affirming the district court’s grant of partial summary judgment finding the Louisiana ad valorem tax scheme’s assessment rates violate the Commerce Clause and granting the plaintiffs a remedy is hereby reversed. We also reverse the court of appeal’s decision declaring La. R.S. 47:1851(K) and the inclusion of “pipeline company” in La. R.S. 47:1851(M) unconstitutional. This case is remanded to the trial court for further proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
JOHNSON, J., dissents and assigns reasons.

. See Transcontinental Gas Pipeline Corporation, et al. v. Louisiana Tax Commission, et al., 05-2604 (La.App. 1st Cir.3/31/06), 925 So.2d 777 (unpublished), writ denied, 2006-0988 (La.9/1/06), 936 So.2d 204; and ANR Pipeline Co., et at v. Louisiana Tax Commission, et at., 05-1142 (La.App. 1st Cir.9/7/05), 923 So.2d 81, writ denied, 05-2372 (La.3/17/06), 925 So.2d 547, cert. denied, 549 U.S. 822, 127 S.Ct. 157, 166 L.Ed.2d 38 (2006).

.La. Const, art. VII § 18(B) fully provides:
The classifications of property subject to ad valorem taxation and the percentage of fair market value applicable to each classification for the purpose of determining assessed valuation are as follows:
Classifications Percentages
1. Land 10%
2. Improvements for residential purposes 10%
3. Electric cooperative properties, excluding land 15%
4. Public service properties, excluding land 25%
5. Other property 15%
The legislature may enact laws defining electric cooperative properties and public service properties.

.La. Const, art. VII § 18(B) was modified by Act 799 of 1979, to increase the percentage of fair market value subject to ad valorem taxes for “public service properties” from 15 percent (15%) to 25 percent (25%). 1979 La. Acts 799. Later in 1980, La. R.S. 47:1854 was modified by Act 602 of 1980 to statutorily reflect the constitutional change. 1980 La. Acts 602.

.La. R.S. 47:1851(M) fully provides:
" "Public service properties” means the immovable, major movable, and other movable property owned or used but not otherwise assessed in this state in the operations of each airline, electric membership corporation, electric power company, express company, gas company, pipeline company, railroad company, telegraph company, telephone company, and water company. For each barge line, towing, and other water transportation company or private car company, only the major movable property owned or used but not locally assessed or otherwise assessed in this state in interstate or interparish operations shall be considered as public service property.”

. Natural Gas Act, 15 U.S.C. §§ 717-717z.

. Florida Gas Transmission Company (plaintiff in district court docket number 540,101; court of appeal docket number 2009 CA 0625), Centerpoint Energy Gas Transmission Company (plaintiff in district court docket number 540,102; court of appeal docket number 2009 CA 0626); and Centerpoint Energy Mississippi River Transmission Corporation (plaintiff in district court docket number 540,103; court of appeal docket number 2009 CA 0627) all filed suits against the LTC and local sheriffs and assessors challenging payment of their 2005 Louisiana ad valorem taxes. Florida Gas Transmission Company filed a separate suit (district court docket number 551,435; court of appeal docket number 2009 CA 0628) challenged its 2006 ad valorem tax payments as well. This challenge was filed under a separate docket number and was not consolidated in the lower courts with the plaintiffs' original claims for their 2005 ad valorem taxes. However, both matters were consolidated separately with Transcontinental Gas Pipeline Corp., et al. (TC No. 491,493). The two separate suits were disposed of by the trial court in the same procedural posture and with identical reasons, and the court of appeal issued two separate opinions based on the same reasoning with identical dispositions in both case numbers.

. In ANR Pipeline, the plaintiffs, all interstate natural gas pipeline companies, sought declaratory judgment and refunds for ad valo-rem taxes paid under protest for the years 1994-2003. The plaintiffs in ANR Pipeline alleged the Louisiana ad valorem tax scheme was being improperly administered, as some intrastate pipelines that qualified as “public service property” were being assessed locally at 15 percent (15%) of fair market value, when they should have been assessed centrally by the LTC at 25 percent (25%) of fair market value. The First Circuit held that the tax scheme was being improperly administered, which violated the uniformity requirement of the Louisiana Constitution and the plaintiffs’ due process and equal protection rights under the Louisiana and the U.S. Constitutions. To remedy the violations the first circuit remanded the case to the LTC with instructions that the LTC require the local parish assessors to reassess the plaintiffs’ property located in their respective parishes at 15 percent (15%) of fair market value and a refund be granted. Because the court granted the plaintiffs relief, they found it unnecessary to consider the plaintiffs’ allegation that the tax scheme violated the Commerce Clause. ANR Pipeline Co., et al. v. Louisiana Tax Commission, et al., 05-1142 (La.App. 1st Cir.9/7/05), 923 So.2d 81, writ denied, 05-2372 (La.3/17/06), 925 So.2d 547, cert. denied, 549 U.S. 822, 127 S.Ct. 157, 166 L.Ed.2d 38 (2006).

. In First Circuit Court of Appeal docket number 2009-0628, the LTC answered the plaintiffs' appeal, however the local parish assessors did not answer the appeal or file their own appeal. In docket number 2009-0624, the LTC answered the plaintiffs’ appeal, and the defendant sheriffs and assessors filed their own notice of appeal to the court of appeal.

. The court of appeal noted that the finding of facial discrimination eliminated the need to evaluate the tax scheme under the third Amer-ada Hess factor: whether or not the tax scheme burdened interstate commerce. The court did not consider whether there was a discriminatory intent because the plaintiffs did not put forth that argument.

. In the plaintiffs' brief, they admit diat it is “somewhat difficult to follow the path by which the First Circuit panel reached its conclusion that the 'tax scheme' accomplished a 'facial' discrimination against the taxpayers in the pure sense of the constitutionality tests that have evolved in the cases over the years."

. Natural Gas Act, 15 U.S.C. §§ 717-717z.

. La. R.S. 47:1853(B) fully provides:
(1) In appraising public service properties, the Louisiana Tax Commission shall:
(a) Employ all of the following nationally recognized techniques of appraisal, where applicable, to best determine fair market value:
(i) The market approach.
(ii) The cost approach.
(iii) The income approach.
(b) Assign such weight to each approach as is appropriate to best determine fair market value.”
(2) However, all public service properties of the same nature and kind shall be appraised in the same manner. The appraised value of all lands owned by the company in this state shall be deducted from the total appraised value of the public service properties and shall be assessed by the Louisiana Tax Commission and shown as a separate item on the tax roll.

. La. R.S. 47:2323 provides:
C. Criteria.
The fair market value of real and personal property shall be determined by the following generally recognized appraisal procedures: the market approach, the cost approach, and/or the income approach.
(2) In utilizing the cost approach, the assessor shall use a method in which the value of a property is derived by estimating the replacement or reproduction cost of the improvements; deducting therefrom the estimated depreciation; and then adding the market value of the land, if any.”

. The Louisiana Tax Commission guidelines § 1305(G) provide, "Economic obsolescence may be recognized with a service factor calculated using the following formula and table ...” (emphasis added). Furthermore, in Crosstex, Lig, 04-22079-030-046, L.T.C. (2005), an appeal from a parish assessors determination of fair market value, a local assessor testified that the "standard operating procedure” for parish assessments is to deny requests for a reduction in value based on economic obsolescence absent an extraordinary evidentiary showing.

. In a series of talking points retained from the LTC captioned HB 643 and SB 387, about proposed legislation by parish assessors in Louisiana, which would have excluded pipeline and gas companies from the definition of "public service properties” and reclassified them as "other property” subject to assess *214 ment by local assessors at 15 percent of fair market value, the LTC stated:
The lower assessment ratio will not result in a tax decrease for these properties but instead would likely result in a significant tax increase because of the differing appraisal methodologies used for the assessment of centrally assessed public service properties (unit methodology-appraisal of ongoing concern) and locally assessed properties (Summation method-replacement cost new of property less depreciation).

. La. R.S. 47:1853(D) states, "In no event, however, shall the [LTC] adopt schedules that reflect average life values of the property instead of appraising the individual companies.”