Dear Sheriff Williams:
You have requested an opinion of this office regarding whether the steps you took to dispose of surplus immovable property were correct under the law. According to your request, the previous Sheriff purchased approximately 98 acres of undeveloped rural land for use as a potential jail site. You did not believe the property was suitable for a jail because it was too remote and does not have access to the utilities and other public services that would be necessary for jail operations. Therefore, you decided the land was no longer needed by the Sheriff's Office and that it should be declared surplus and sold.
As head of your law enforcement district, [1] you gave public notice of the proposal to declare the property surplus and sell it at a private sale. You have also had the property appraised by a qualified appraiser. The law enforcement district passed a resolution authorizing the sale of the property at fair market value. Following the passage of the resolution, you advertised the property for sale. After the property had been listed for sale for a period of time, you received an offer from a potential buyer. The offer was actually slightly lower than the appraised value because a new survey of the property showed that the parcel was five acres smaller than originally thought. The total price was reduced to account for the smaller size using the per acre value of the offer. *Page 2 
Before you proceed with completing the transaction, you have requested an opinion of this office regarding whether you may accept an offer slightly below the appraised value and whether there is any prohibition against selling this surplus immovable property to a private citizen.
In La. Atty. Gen. Op. No. 01-06, our office opined that a law enforcement district is vested with the authority to dispose of surplus immovable property, based on the following:
 La.R.S. 33:9001 states that the purpose of law enforcement districts is for "providing financing to the office of sheriff' of the parish. Among the powers granted to law enforcement districts by the legislature is [sic] the power to tax, to issue bonds, and to borrow money. Of particular relevance to this inquiry is LSA-R.S. 33:9004, which provides, in pertinent part:
 A. In addition to the powers otherwise granted by this Chapter, law enforcement districts shall have the authority to:
 (1) To execute such contracts and other instruments and take such other action as may be necessary to fulfill the purposes of this Chapter.
 * * * When read in para materia, LSA-R.S. 33:9001 and LSA-R.S. 33:9004(A)(1) appear to vest in law enforcement districts the authority to dispose of surplus immovable property. LSA-R.S. 33:9004(A)(1) grants the districts the power to execute contracts and other legal instruments, as necessary, to provide funding to the office of the sheriff which is the specifically stated objective of LSAR.S. 33:9001.
La. Atty. Gen. Op. No. 01-06 also pointed out that there is no procedure set forth in Louisiana law that a law enforcement district must follow when selling surplus immovable property. Past opinions of this office have concluded that political subdivisions that have the authority to dispose of surplus property but do not have statutory guidance on the procedure which must be followed, such as law enforcement districts, may, but are not required to utilize the sale procedures for municipalities selling surplus property set forth in La.R.S. 33:4712.[2] See La. Atty. Gen. Op. Nos. 09-0038, 03-0056 and 92-606.
The private citizen who has made an offer on the land you are selling did so after the land was offered for sale to the general public. In La. Atty. Gen. Op. Nos. 01-06 and 01-06A, *Page 3 
wherein our office was asked whether "it is legal for a law enforcement district to sell its immovable property by private sale," we stated that "it appears there is nothing illegal with regard to a political subdivision of the state selling its surplus immovable property at private sale . . . Notwithstanding the foregoing determination, our initial opinion was, and remains, that as a matter of public policy, the proposed sale of surplus immovable property should be made public." See also La. Atty. Gen. Op. No. 07-0096, which addressed the procedure a political subdivision should follow in selling surplus property, and stated that "the critical inquiry is not what method is used to sell surplus property, but whether the proposed sale is advertised in such a manner as to adequately give the public notice of the proposed sale, as well as create sufficient interest in the sale so that the best price is obtained." We therefore conclude that you have the authority to sell the surplus immovable property to a private citizen after providing public notice of your intention and procedure to offer the property for sale to the public.
With regard to whether you may accept an offer of less than the appraised value and still be in compliance with Article VII, Section 14 of the Louisiana Constitution, our office has previously opined that a bid for less than the appraised value may be accepted if the public entity can adequately document that the bid reflects fair market value. La. Atty. Gen. Op. No. 10-0255. As explained in past opinions of this office, `fair market value' means "the price at which property would change hands between a willing buyer and a willing seller when neither party is under any compulsion to buy or sell and both parties have reasonable knowledge of relevant facts." La. Atty. Gen. Op. Nos. 09-0293, 080226, 06-0236.[3]
We are aware that obtaining an appraisal is a very common method used to determine the fair market value of a piece of property. We are also aware that Louisiana courts have recognized that real property appraisal is not an exact science, but rather a subjective exercise. See Transcontinental Gas Pipeline Corp. v. Louisiana TaxCom'n, 2009-1988 (La. 3/16/10), 32 So.3d 199 (stating, "[t]his may be an imperfect appraisal system, as appraisal is an imperfect science to begin with. . . ."); State Dept. ofTransp. Development v. Scramuzza, 95-786 (La. App. 5 Cir. 4/30/96), 673 So.2d 1249, 1257 (noting "appraisal of land is not an exact science."). Once an appraisal is obtained, the fair market value of a piece of property can be further tested by offering the property for sale to the public, thereby subjecting the property to actual market conditions. La. Atty. Gen. Op. No. 06-0236. If market conditions only produce an offer that is below the appraised value, the offer may be accepted if the law enforcement district can *Page 4 
adequately document in its files that the bid reflects fair market value. See La. Atty. Gen. Op. No. 10-0255.
In conclusion, it is the opinion of this office that you may sell surplus immovable property currently owned by your law enforcement district to a private citizen who made an offer on the land after it was advertised and offered for sale to the general public. We further opine that if market conditions only produce an offer that is below the appraised value, the offer may be accepted if the law enforcement district can adequately document for its file that the bid reflects fair market value.
We trust this adequately responds to your request. However, if our office can be of further assistance, please do not hesitate to contact us.
 Very truly yours,
 JAMES D. "BUDDY" CALDWELL Attorney General
 By: __________________________ Lindsey K. Hunter Assistant Attorney General
 JDC/LKH/chb
[1] Law enforcement districts are political subdivisions of the state. La.Const. art. VI, Sec. 44. They are special districts existing and created under the authority of the Constitution and Legislature. La.Const. art. VI, Sec. 19; La.R.S. 33:9001, et seq., for the purpose of "providing financing to the office of sheriff's of the parish.
[2] La.R.S. 33:4711-4720 set forth the procedure required to authorize the sale, exchange or lease of public property by a police jury or municipality.
[3] Black's Law Dictionary provides a similar definition of `fair market value': "[t]he price that a seller is willing to accept and a buyer is willing to pay on the open market and in an arm's-length transaction; the point at which supply and demand intersect." Black's Law Dictionary, 9th ed. 2009.